**Stafford James HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 35654.

Court of Criminal Appeals of Texas.

April 24, 1963.

Rehearing Denied June 12, 1963.

Second Motion for Rehearing Denied Oct. 16, 1963.

Marian S. Rosen, Houston, James S. McGrath, Beaumont, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Jon N. Hughes, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, ten years.

Appellant was jointly indicted with three others, but severance was granted and appellant was tried alone.

Luzene Nickelberry testified that as she and her male companion Holmes were walking home on the night in question they were met by four young men walking together who crossed over to the side of the street where she and Holmes were walking, "bumped into" Holmes, and after the group had passed they turned and overtook her and Holmes, circled around them and offered to fight Holmes. When he declined, one of the four kicked him in the back, causing him to lose his footing, and at this juncture she fled. She saw Holmes a short while thereafter cut and bleeding. More than a hundred pages of medical testimony follows which establishes the cause of Holmes' death as being directly attributable to the injuries he received in this attack.

Appellant's confession recites that he and his companions "walked over to where he (Holmes) would bump into me. I did this.

because we wanted to start a fight. After I bumped him we talked to him to try to start the fight but he said that was all right, that he didn't want any trouble. I hit him and then Leonard Roy, Jesse Barnett and John Neal all hit him. When all of us had hit him, the man (Holmes) fell down on the ground and John Neal picked up a board and hit him in the head. All of us ran after this. * * * I didn't know the man that we beat up or the girl."

The peculiar fact here presented is that Holmes did not die as the result of a blow to the head but died five days later because of complications growing out of a fractured jaw and two fractured ribs which he sustained during the course of the assault upon him. From these fractures, according to the expert medical testimony, there was released into the blood stream fat emboli which, when the blood reached the lungs, caused an impairment of the pulmonary functions which eventually caused death. Appellant's able counsel questioned the doctors who appeared as State's witnesses carefully in an effort to establish that death was caused by Holmes' failure to submit to hospitalization or by the administering of a general anesthetic prior to the operation on his jaw but was unable to secure testimony to support such defensive theories.

■ The most difficult question presented by this case is the sufficiency of the evidence to support the jury's verdict that the assault was committed with the intent to kill and that appellant acted as a principal. While the State did elicit the testimony from an officer that the board in question was capable of inflicting death or serious bodily injury, we are unable to glean from the testimony of the doctors any proof that the board inflicted the injuries which ultimately brought about the death of the deceased. In fact, Dr. Halleck testified in effect that a blow by someone's fist could have caused the two fractures in the jaw. Did these four (or possibly five; the record at one place mentions another "person named Jimmie") young men, who purposely

provoked a difficulty with this middle aged man, who circled him and then inflicted blows upon his person which broke his jaw bone in two places and two of his ribs, have the intent to kill deceased? We are not here dealing with the sufficiency of the evidence to support a finding that appellant had any knowledge of his co-indictees' intent to kill prior to the assault (as we were in Brothers v. State, 167 Tex.Cr.R. 521, 321 S.W.2d 311; Lee v. State, Tex.Cr.App., 214 S.W.2d 619; and Brown v. State, 146 Tex. Cr.R. 602, 177 S.W.2d 64). But the question here is whether each of the assailants from their concerted action demonstrated such an intent. We have concluded that the answer must be in the affirmative.

■ Having so concluded, we pass on to the other questions presented by brief and in argument. There were no objections to the court's charge. Several requested charges were tendered and refused. The transcript does not reflect that an exception was reserved to the refusal of such charge, and under our holding in Medlock v. State, 356 S.W.2d 312, and in the cases therein cited, the refusal of the requested charge is not before us for review.

■ Appellant in his testimony repudiated the confession, and the court instructed the jury not to consider the same if they believed or had a reasonable doubt that such confession was not voluntarily made. Appellant was arrested at 3:00 A.M., and the confession was signed within an hour and a half or two hours later. The officers mentioned in appellant's testimony all denied the use of coercion. The confession was clearly not inadmissible as a matter of law. Stickney v. State, Tex.Cr.App., 336 S.W.2d 133, 137, and Stickney v. Texas, 363 U.S. 807, 80 S.Ct. 1245, 4 L.Ed.2d 1151.

We find no error in the refusal of the court to call a special venire. Harris County operates under Article 601-A, Vernon's Ann.C.C.P., and, as qualified by the court, appellant's bill of exception presents no error.

We find no error in the argument. While the prosecutor may have started to tell the jury something outside the record, he was stopped by the objection of alert counsel before he reached his destination.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.