Allen L. COOK, Appellant,

v.

The STATE of Texas, Appellee.

No. 37686.

Court of Criminal Appeals of Texas.

March 10, 1965.

Rehearing Denied April 21, 1965.

F. T. Gauen, Jr., Dallas, Payne Roye, Graham, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder; the punishment, twenty years.

The state's evidence shows that on the day in question the appellant was at a cedar

cutters' camp located on Conner Creek in the southeast part of Young County. Around 1 p. m., the deceased, twenty-two years of age, and three other young men drove to the creek in an automobile and stopped on the opposite side from the camp. The deceased and his companions began drinking beer and during such time some of them exposed their private parts in such manner that they could be seen by those present at the camp, including a mother and daughter. When one of those present at the camp began shooting a *.22* rifle at some cans, one of the members of the deceased's party hollered across the creek and referred to the person doing the shooting as an s. o. b. An invitation was also issued for the person doing the shooting to come across the creek. In response to the invitation, the appellant, his son, and three others staying at the camp crossed the creek in a boat and went ashore to where the deceased and his companions were, at the automobile, armed with sticks and clubs. A fight ensued and when the deceased ran around the front of the automobile he was thrown to the ground by Charles Dahl, a member of the appellant's party. While the two were on the ground, appellant came to where they were struggling and then walked away. Blood was then seen on the deceased and Dahl got up and accompanied appellant and his other companions back to the camp across the creek. After arriving at the camp, appellant, in talking to his son, stated: " 'I guess that taught him a lesson. I don't guess *them* S.O.B.'s will be coming back down here.' "

It was further shown that the deceased was left lying on the ground by his three companions, who fled in the automobile but later returned to the scene. When they returned, the deceased was on the ground and they proceeded to take him to a hospital, where he was pronounced dead upon arrival by Dr. R. G. McDaniel.

Dr. McDaniel testified that the deceased had a puncture wound in the left upper thigh, approximately one to one and a half inches deep, which could have been made with a knife, and that the cause of death was the knife wound and loss of blood.

The state's proof further shows that when Sheriff John Edwards went to the scene to investigate the killing, in talking with appellant the appellant gave the sheriff a knife, saying that it was the knife he "used on that boy." It was further shown that the knife was not, in fact, the knife used by appellant in stabbing the deceased but belonged to appellant's son and that the knife used by appellant in the stabbing was given by him to his son after they returned to the camp. This knife the son hid and was later found and introduced in evidence.

Testifying in his own behalf, appellant stated that when he and his companions went across the creek they were met by the deceased and the other three boys, who were armed with sticks or clubs; that when he told one to throw down a stick the boy kicked appellant in the stomach, knocking him out and causing him to fall to the ground; that when appellant got up he was "goofy" and had his knife in his hand and ran into the boy, who fell down, and "I grabbed him by the right leg and picked it up and stabbed it." Appellant further swore that he had no intent to seriously injure anyone, and that on his way back across the creek in the boat he washed the blood off his knife. He further swore that he did not purposely give the sheriff the wrong knife and that the reason he did was because his son had swapped knives with him after the stabbing.

The court in his charge submitted to the jury the issue of appellant's guilt of both murder with and without malice and also of aggravated and simple assault.

By their verdict the jury rejected appellant's explanation of the killing.

■ We first overrule appellant's contention that the evidence is insufficient to support the judgment of conviction because there is no proof of any intent to kill. The

evidence shows that appellant stabbed the deceased and left him on his knees in a dying condition and hollering "Don't leave me. Come back and get me." After returning to the camp, appellant began filing an axe while the deceased was lying on the ground across the creek in plain sight. Such facts are sufficient to support a finding by the jury of intent to kill. See: Harris v. State, Tex.Cr.App., 370 S.W.2d 886.

We shall next discuss certain claimed errors urged by appellant in his brief and in oral argument as grounds for a reversal of the conviction.

Among the witnesses called by the state were Charles Dahl and Jerry Minter, two of appellant's companions who accompanied him across the creek and witnessed the killing. Each witness had testified before the grand jury, and Minter had also made a written statement to the district attorney. During their examination by the district attorney, both witnesses were interrogated with reference to their testimony given before the grand jury. When such written testimony was exhibited to them, both admitted that certain testimony which they had given at the trial was inconsistent with their testimony before the grand jury. Minter also admitted that some of his testimony was contrary to his written statement made to the district attorney after the killing.

Under the record, we find no reversible error in the manner in which the witnesses were impeached by the district attorney and the only serious question presented relates to the court's action in refusing appellant's request to inspect the witness Dahl's grand-jury statement for the purpose of cross-examination.

■ While under the holdings of this court in Sewell v. State, 367 S.W.2d 349, and cases there cited, appellant was entitled to the statement, we find no reversible error, in view of the fact that before the trial was concluded, both Dahl's and Min-ter's statements were tendered to appellant for the purpose of cross-examination of the witnesses, who were still available for examination. The record further reflects that appellant did examine the witness Minter from the witness's written statement before the grand jury.

■ The court's failure to limit in his charge the jury's consideration of the witness Dahl's testimony before the grand jury to the matter of impeachment does not, under the record, present reversible error. No objection was made by appellant to the charge, nor was any request made that the court limit the jury's consideration of the testimony.

■ In his brief, appellant complains that reversible error was committed when Sheriff Edwards was permitted to testify that appellant declined to take a lie detector test.

No objection was made by appellant to the testimony and under the record he is in no position to complain. See: 5 Tex.Jur.2d 61, Sec. 39, and cases there cited.

It is also contended that the court erred in permitting Deputy Sheriff Casey to testify that he took Willie Ray Cook and the witness Charles Dahl to Wichita Falls for a lie detector test and after taking the test they accompanied the officer to the camp where the knife used by appellant in the killing was found hidden in some leaves and the murder charge was then filed against him.

■ While the matter of taking a lie detector test should not have been gone into, we perceive no reversible error, in view of the admission in evidence of the knife without objection and appellant's admission in his testimony that it was the knife used by him in killing the deceased.

Numerous other errors are urged by appellant to certain questions and statements made by the district attorney during his examination of the witnesses. Error is

also urged to certain testimony of the witnesses.

 An examination of the record reflects that no objection was made by appellant except in one instance when the objection was by the court sustained, and in another instance when no ruling by the court was obtained on the objection. Under such record no error is presented.

 Error is also urged to certain comments made by the court in his ruling on the admissibility of evidence. No objection appears to have been made by appellant to such comments. Therefore, nothing is presented for review.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.

Opinion approved by the Court.

WOODLEY, Judge (dissenting).

Under the authority cited, the appellant was entitled to inspect the document used in the jury's presence to refresh the memory of the witness, or to lay a predicate for impeachment, at the time of his request.

That appellant was permitted to see the grand jury testimony of the Witness Dahl long after his lengthy examination was completed, and after other witnesses had testified and the state was ready to close, without any further request or demand for such inspection was not a compliance with the rule followed as recently as February 17, 1965, in Walton v. State, Tex.Cr.App., 386 S.W.2d 805, that reversal will result *without any showing of injury* for the denial of defendant's *timely request* that he be permitted to inspect *any* document, instrument or statement used in some way before the jury, such as in questioning a witness.

Appellant's request was timely. The leave to inspect was not.

I respectfully dissent.