**Affirmed and Memorandum Opinion filed March 20, 2012.**



In The

# Fourteenth Court of Appeals

_____

NO. 14-10-00977-CR
_____

**PHILLIP WAYNE HARRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1208620**

## MEMORANDUM OPINION

Appellant, Phillip Wayne Harris, appeals his conviction for murder. Tex. Penal Code Ann. § 19.02 (West 2011). Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Tanya McMurry was a homeless drug addict and prostitute who lived in various hourly motels in the general area of the West Bellfort-Highway 59 intersection in the southwestern section of Houston. According to McMurry, when she was unable to obtain sufficient money to rent a room, she would live under one of the highway overpass bridges in that area. McMurry testified that a large number of homeless people

congregated around the West Bellfort-Highway 59 intersection, and that the area was known for drugs and prostitution.

Late on the evening of March 23, 2009, McMurry spent several hours with appellant at the Grand Palace Inn. According to McMurry, the purpose of the meeting was the rendering of "sexual favors."[1] At the end of the encounter, appellant was short on the amount of money he owed McMurry. They agreed that appellant would pay McMurry the next day, and appellant allowed McMurry to hold his driver's license as collateral for the money he owed her. According to McMurry, she left appellant in the early morning hours of March 24 when she returned to the hotel where she was living at the time.

McMurry testified she remained at her hotel until late on the evening of March 24. McMurry left the hotel to walk west along West Bellfort to the McDonald's restaurant located near the intersection of West Bellfort and Highway 59.

At this point, Highway 59 travels in a roughly north/south direction. West Bellfort passes under Highway 59 and the intersection includes northbound and southbound feeder roads as well as a twenty-four foot wide u-turn lane that allows traffic on the northbound feeder road to turn around and travel southbound. A Shell gas station sits at the intersection on the northbound feeder road south of West Bellfort. The McDonald's is on the west side of Highway 59.

As McMurry walked under the highway, she saw appellant at the Shell gas station. Appellant was driving a white cargo van and he pulled out of the Shell station and drove across the northbound feeder road and into the u-turn lane. Appellant drove up beside McMurry walking under the freeway and stopped his van in the u-turn lane. Appellant called out to McMurry. As McMurry walked up to the van, appellant demanded the return

---

[1] Appellant testified that he spent several hours with McMurry but the sole purpose of the meeting was to use drugs and he denied there was any sexual activity. However, both appellant and McMurry agreed on a key detail: by the time their rendezvous ended sometime on March 24, appellant owed McMurry money and appellant allowed McMurry to hold his driver's license until he paid her the money that was owed.

of his driver's license. McMurry told appellant she would return the driver's license when he paid her the money he owed. Appellant and McMurry threw food at each other and, at that point, appellant, who described himself as angry, got out of the van. Appellant approached McMurry and told her, "I'm going to fuck you up."

As appellant approached McMurry, two homeless men, Randy Hanson and Glen "Eddie" Harvey, intervened and told appellant to leave McMurry alone. An argument ensued between Hanson and Eddie on the one hand and appellant on the other. The argument ended, and appellant returned to his van.

Appellant backed his van up in the u-turn lane and then slammed on the brakes. Appellant remained stationary in the u-turn lane for about thirty seconds. According to Eddie, appellant, as he sat behind the wheel of the van, looked as though he was mad or in a rage. McMurry testified that appellant suddenly "turned the wheel hard" and then "put the car in drive, jumped the curb as if aiming to hit both [Hanson and Eddie], instead he only hit [Hanson]." Eddie testified that appellant hit the curb and turned the van toward Hanson, who stood on the sidewalk like he was frozen, and struck him with the middle of the van's hood. According to McMurry, after he was hit by the van, Hanson tried to hold onto the hood. At that point, appellant drove his van down off the curb and Hanson fell off the hood and hit the street in the middle of the u-turn lane. Appellant drove off without stopping or slowing down. Hanson died in the street as a result of a skull fracture.

McMurry testified she believed appellant intentionally struck Hanson with his van. McMurry based her opinion on her observing appellant back up his van, then turn the wheel of the van, accelerate the van so that it would drive up over the curb and onto the sidewalk. McMurry testified that, after driving up onto the sidewalk, appellant angled the van right at Hanson, and he struck Hanson without braking or slowing down. Eddie also testified that he believed appellant intentionally hit Hanson. Eddie testified on why he came to this conclusion:

3

I witnessed it. I was standing there just watching every bit of it. He had time. He thought about it when he -- when he – even before he backed up, he sat there a minute. He could have left then. He thought about this. He thought it over. He made the decision to put it in reverse, back up and stop, and jump. He made that decision. He did.

According to Eddie, appellant turned the van specifically toward Hanson, he did not hit the brakes, and he did not try to turn the van away from Hanson.

Appellant testified during his trial. Appellant admitted he hit Hanson with his van, but claimed it was an accident. Appellant admitted that he pulled his van into the u-turn lane where he stopped, got out, and argued with McMurry. Appellant also testified that Hanson arrived and threatened him with a milk crate. Appellant testified he returned to his van in order to avoid trouble.

Appellant said he did not want to go forward where he would pass close by Hanson, so he started to back his van up. According to appellant, his intention was to back his van out of the u-turn lane and into the northbound feeder road. However, unable to see out of the back of his van, appellant stopped backing up after a short distance. At that point, appellant testified that he noticed some food from his food fight with McMurry laying in his van. Deciding to clean up the mess, and at the same time, give Hanson more time to move away, appellant pulled the two passenger tires of the van up onto the curb of the u-turn lane and placed the van in park. After a few seconds, appellant looked up from his cleaning and saw Hanson walking in front of his van with a milk crate. Appellant testified Hanson was heading toward the driver's side of the van. At that point, appellant placed the van in drive and "made a big swoop" in an effort to drive around Hanson. At the time, appellant was not sure whether he hit Hanson or not. Appellant drove away without looking back and continued on to the hotel where he was staying.

Appellant saw himself on Crime Stoppers the next day and learned he was wanted for murder. Appellant considered turning himself into the police, but he never did so. Instead, appellant smoked crack for a week until he was arrested at the motel.

4

To rebut appellant's testimony that he accidentally hit Hanson, the State called Ronald Jervis to testify. Jervis met appellant while both were confined in the Harris County Jail. Jervis testified that appellant showed no remorse for having killed Hanson; rather, appellant joked about it and thought it was funny. Jervis reported that appellant told him he got into an argument with a "bum," who threatened him with a milk crate. Jervis testified that appellant told him he got in his van, backed it up to align with the "bum" and then appellant "floored it and ran over him." Appellant returned to the witness stand after Jervis's testimony and denied telling Jervis anything about his case.

The jury found appellant guilty of murder and then assessed his punishment at fifty years' confinement. This appeal followed.

DISCUSSION

Appellant raises eleven issues which we consolidate into seven. We address each issue in turn.

## I. Sufficiency of the Evidence

In his first issue, appellant contends the evidence is insufficient to prove beyond a reasonable doubt that he had the requisite mental state to support his murder conviction.

### A. The Standard of Review and Applicable Law

In a sufficiency review, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all

5

or part of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of conflicts in the evidence is within the jury's discretion, and such conflicts alone will not call for reversal if there is enough credible evidence to support a conviction. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). An appellate court may not re-evaluate the weight and credibility of the evidence produced at trial and in so doing substitute its judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Harris v. State*, 164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curry*, 30 S.W.3d at 404. "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villareal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

A person commits murder if he: (1) intentionally or knowingly causes the death of an individual; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1),(2). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to

6

engage in the conduct or cause the result. *Id.* at § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* at § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

Intent is a question of fact within the sole purview of the jury. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) ("[T]he defendant's state of mind is a question of fact that must be determined by the jury."). Direct evidence of the required mental state is not required. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Intent may be inferred from circumstantial evidence such as the defendant's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). While an automobile is not a deadly weapon per se, intent to kill by the use of an automobile may be shown from all the circumstances surrounding the killing. *Samuels v. State*, 785 S.W.2d 882, 887 (Tex. App.—San Antonio 1990, pet. ref'd) (citing *Palafox v. State*, 484 S.W.2d 739, 743 (Tex. Crim. App. 1972)).

### B.  Analysis

Here, the evidence demonstrates that appellant had a confrontation with McMurry over the return of his driver's license. Appellant admitted McMurry's refusal to return the license made him angry and he exited his van while parked in the u-turn lane. Two homeless men, Hanson and Eddie, intervened when appellant approached McMurry and an argument ensued. Appellant apparently retreated as he returned to his van, which he proceeded to back up in the u-turn lane. Appellant then slammed on the brakes and remained stationary in his van for a period of time contemplating his next action. The evidence established that appellant's way was clear to drive away at that point in time, but appellant chose not to do so. Instead, he turned the wheels of his van toward the sidewalk

7

next to the u-turn lane, drove his van up and over the curb, onto the sidewalk. Appellant then drove directly at Hanson, who was standing like he was frozen on the sidewalk. Appellant hit Hanson with the middle of the van's hood. Hanson tried to hold onto the hood as appellant continued driving and then, when appellant drove down off the sidewalk, Hanson fell onto the pavement of the u-turn lane, striking his head causing a fatal skull fracture. Both eyewitnesses to testify said that appellant never braked or slowed down once he drove onto the sidewalk and he drove off after hitting Hanson without braking or slowing down. Appellant himself testified that he never looked back, did not stop, and made no effort to check on Hanson's condition. Instead, appellant drove back to his hotel, and he chose not to turn himself in despite his knowledge that he was a suspect in Hanson's murder. When appellant was arrested a week after the incident and the police seized his van, they observed that the van had been thoroughly cleaned inside and out. Appellant's cell mate testified that appellant told him he ran over the "bum" on purpose.

We conclude the evidence is sufficient to establish beyond a reasonable doubt that appellant intended to strike Hanson with his automobile causing Hanson's death. *See Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (a finding of intent may be inferred from evidence of flight from the scene); *see also Hunter v. State*, 468 S.W.2d 96, 98–100 (Tex. Crim. App. 1971) (concluding that jury could reasonably infer intent to kill from evidence that the defendant drove his vehicle at thirty to forty miles per hour while woman clung to the door trying to regain foothold, flew over the car, and sustained a skull fracture); *see also Cook v. State*, 388 S.W.2d 707, 709 (Tex. Crim. App. 1965) (holding evidence sufficient when it showed that the defendant stabbed the victim, left him dying on his knees despite pleas not to leave him, and he proceeded to file an axe while the victim's body was in plain sight across a creek from the defendant's camp); *see also Salazar v. State*, 131 S.W.3d 210, 213 (Tex. App.—Fort Worth 2004, pet. ref'd) (holding evidence sufficient to support the defendant's murder conviction when it showed the defendant (1) drove over the parking lot curb onto the sidewalk rather than use an available

8

exit out of the parking lot, (2) drove straight at the victim and another person, (3) struck and killed the victim with his vehicle, and (4) then drove away laughing).

The evidence is sufficient to support appellant's conviction for murder. Accordingly, we overrule appellant's first issue on appeal.

## II.     Extraneous Offenses Jury Instruction

During the guilt-innocence phase of his trial, evidence was admitted of appellant's extraneous offenses, including drug use, solicitation of prostitution, and fighting with Jervis while in the Harris County Jail.   Appellant did not object to this evidence when it was first introduced, he did not lodge any objections to the jury charge, and he did not request the jury instruction he now argues should have been included in the trial court's charge.   Instead, in his second issue, appellant contends the trial court erred when it, *sua sponte*, did not submit a jury instruction informing the jurors that they could consider evidence of these extraneous offenses only for limited purposes and only if they believed the evidence beyond a reasonable doubt.

### A.     Standard of Review

An appellate court's first duty in analyzing a jury charge issue is to decide whether error exists.   *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).   If the reviewing court finds error, it then analyzes that error for harm.   *Id.*

### B.     Analysis

The Court of Criminal Appeals has resolved this issue against appellant.   In *Delgado v. State*, the court stated that "a defendant is entitled to limiting instructions on the use of extraneous offenses during the guilt phase only if he timely requests those instructions when the evidence is first introduced."   235 S.W.3d 244, 253 (Tex. Crim. App. 2007).   The court went on to state:

9

> Even if a limiting instruction on the use of an extraneous offense would have been appropriate here under Rule 404(b), the trial judge had no duty to include one in the jury charge for the guilt phase because appellant failed to request one at the time the evidence was offered. Because the trial judge had no duty to give *any* limiting instruction concerning the use of an extraneous offense in the guilt-phase jury charge, it naturally follows that he had no duty to instruct the jury on the burden of proof concerning an extraneous offense.

*Id.* at 254 (emphasis in original). The court concluded by emphasizing "the appropriateness of the general rule that a trial court is not required to instruct the jury *sua sponte* on the burden of proof to be used when considering evidence of an extraneous offense during the guilt phase." *Id.*

Here, appellant did not object to the extraneous offense evidence and he did not request a limiting instruction when that evidence was first introduced. Therefore, appellant was not entitled to a limiting instruction in the jury charge and the trial court was not required to include a reasonable doubt instruction *sua sponte*. *Id.* We overrule appellant's second issue on appeal.

## III.  Corroboration of Jailhouse Informant's Testimony

In his third issue, appellant contends the trial court erred when it failed, *sua sponte*, to instruct the jury, pursuant to article 38.075 of the Code of Criminal Procedure, that they could not convict appellant based on Jervis's testimony unless his testimony was corroborated by other evidence tending to connect appellant to the murder.[2] Tex. Code Crim. Proc. Ann. art. 38.075(a) (West 2011).

---

[2] In relevant part, article 38.075 provides:

A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

Tex. Code Crim. Proc. Ann. art. 38.075(a) (West 2011).

We recently addressed this issue and determined that a trial court is under a duty to instruct the jury *sua sponte* according to article 38.075. *Brooks v. State*, No. 14-10-00990-CR, 2011 WL 5928504, at *2 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.). Because the trial court did not include an article 38.075 instruction in the jury charge, we conclude the failure to do so was error.

Having determined that the trial court erred, we must now examine whether the error was harmful. We begin the harm analysis by first eliminating all of Jervis's testimony and then determining whether the remaining inculpatory evidence tends to connect appellant to the offense. *Id.* at *3. A harmless error analysis for the omission of the article 38.075 witness instruction is flexible and takes into account the existence and strength of such corroborating evidence and the applicable standard of harm. *Id.* In determining the strength of corroboration evidence, we examine (1) its reliability or believability; and (2) the strength of its tendency to connect the defendant to the crime. *Id.* The corroborating evidence need not be sufficient, standing alone, to prove beyond a reasonable doubt that a defendant committed the offense. *See Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (addressing the corroboration requirements under article 38.14 of the Code of Criminal Procedure). Instead, there need be only some non-accomplice evidence tending to connect the defendant to the crime, not every element of the crime. *Id.*

Because appellant did not object to the court's charge to the jury, we will not reverse unless the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 743–44. Under the egregious harm standard, the omission of the instruction is generally harmless unless the corroborating evidence is so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. *Brooks*, 2011 WL 5928504, at *3. The existence of corroborating evidence tending to connect the defendant to the charged offense can render the trial court's error in failing to submit an article 38.075

11

instruction harmless by fulfilling the purpose that such an instruction is designed to serve. *Id.* at *2.

Removing Jervis's testimony from consideration, we conclude there is abundant evidence, set out above, connecting appellant to the crime. This evidence includes the testimony of three eyewitnesses, including appellant himself, that appellant struck Hanson with his van, causing Hanson's death. While it is not necessary that there be corroborating evidence on all elements of the offense, we also conclude there is evidence corroborating Jervis's testimony regarding appellant's mental state. This circumstantial evidence includes both McMurry's and Eddie's testimony, detailed above, recounting the events leading up to appellant driving his van into Hanson and then driving off after doing so without stopping. Appellant's intent could be reasonably inferred from this evidence. *See Guevara*, 152 S.W.3d at 50. We hold the trial court's error in omitting the article 38.075 instruction from the jury charge was harmless. *See Brooks*, 2011 WL 5928504, at *2. We overrule appellant's third issue.

## IV. Ineffective Assistance of Counsel

In his fourth through eleventh issues, appellant contends he received ineffective assistance of counsel in four ways.[3] Appellant claims he received ineffective assistance of counsel when his trial counsel failed to: (1) request jury instructions under Rule 404 of the Texas Rules of Evidence; (2) request a charge requiring corroboration of Jervis's testimony; (3) object to allegedly improper witness testimony concerning appellant's mental state; and (4) object to the prosecutor's closing argument during the punishment phase that allegedly invited the jury to consider the application of parole law.

---

[3] Appellant divides each of his ineffective assistance claims into two separate issues, one under the United States Constitution, the other under the Texas Constitution. However, appellant does not separately brief these issues and he does not provide any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution. Therefore, we will not separately address his state constitutional issues. *See Black v. State*, 26 S.W.3d 895, 896 n. 4 (Tex. Crim. App. 2000).

Appellant did not file a motion for new trial. In addition, appellant's trial counsel was not afforded the opportunity to explain his decisions or trial strategy relating to each of appellant's allegations. Accordingly, the record is silent as to the reasons for trial counsel's conduct.

## A. Standard of Review

In reviewing claims of ineffective assistance of counsel, we apply a two prong test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). To establish ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id.*

An accused is entitled to reasonably effective assistance of counsel. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). However, reasonably effective assistance of counsel does not mean error-free representation. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas*, 163 S.W.3d at 740; *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez*, 343 S.W.3d at 142–43. Instead, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142. When such direct evidence is not

available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143. Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When trial counsel has not had an opportunity to explain his or her actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

If a criminal defendant can prove trial counsel's performance was deficient, he still must prove he was prejudiced by his trial counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if the trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

## B. Extraneous Offense Evidence

In his fourth and fifth issues, appellant contends his trial counsel was ineffective when he "failed to request any jury instructions under Texas Rule of Evidence 404." In addressing appellant's second issue, we have already determined appellant was not entitled to an extraneous offense instruction under Rule 404. Accordingly, failure to request such an instruction cannot constitute ineffective assistance of counsel. *See Johnson v. State*, 233 S.W.3d 109, 116–17 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that, since the use of a general verdict form was proper, a failure to object to its use cannot serve as the basis for a finding that trial counsel was ineffective). We overrule appellant's fourth and fifth issues.

14

## C. Failure to Request Corroboration Instruction

In his sixth and seventh issues, appellant contends he was deprived of effective counsel because his trial counsel failed to request a jury instruction pursuant to article 38.075 requiring corroboration of Jervis's testimony. Assuming without deciding trial counsel's failure to request the corroboration instruction meets the first *Strickland* prong, we conclude appellant has not shown that he was prejudiced by that failure. We have already determined that appellant was not harmed by the failure of the trial court to include a corroboration instruction pursuant to article 38.075 of the Code of Criminal Procedure. We reached this conclusion because there was sufficient other evidence connecting appellant to the crime. Therefore, even if the corroboration instruction had been given, we conclude there is not a reasonable probability that, but for trial counsel's deficient performance, the result of the trial would have been different. *See Rivera v. State*, 123 S.W.3d 21, 32 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding second *Strickland* prong not met in failure to investigate case because there was overwhelming evidence supporting the charges, the defendant's guilty pleas, and the sentences imposed). We overrule appellant's sixth and seventh issues.

## D. Eyewitness Testimony Regarding Appellant's Mental State

In his eighth and ninth issues, appellant contends his trial counsel was ineffective because he failed to object to allegedly improper witness testimony concerning appellant's mental state. According to appellant, since the case against appellant hinged on his mental state, "no excuse could justify not objecting to this clearly objectionable testimony."

To establish an ineffective assistance of counsel claim based on a failure to object to the admission of evidence, an appellant must first establish that the trial court would have erred in overruling these objections. *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002). Here, appellant complains of his trial counsel's failure to object to the lay opinion testimony of McMurry and Eddie that appellant intentionally hit Hanson with his van.

15

McMurry's and Eddie's opinions were based on their observations of appellant's actions before, during, and after his van hit Hanson.

Opinion testimony regarding the mental state of the accused is not inadmissible *per se*, and rulings on the admissibility of lay opinion testimony are within the discretion of the trial court. *See* Tex. R. Evid. 701, 704; *Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997) ("[W]e conclude that once the proponent of the opinion establishes personal knowledge of the facts underlying the opinion, he has satisfied the perception requirement of Rule 701. This is so even if the opinion concerns a culpable mental state."). We conclude appellant has not established that the trial court would have erred in overruling an objection to McMurry's and Eddie's testimony that appellant intentionally hit Hanson with his van. As a result, we hold appellant has not met his burden under the first *Strickland* prong. *See Ortiz*, 93 S.W.3d at 93; *see also Jagaroo v. State*, 180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (trial counsel's failure to object did not amount to ineffective assistance of counsel where objection would have been futile). We overrule appellant's eighth and ninth issues.

### E.      Failure to Object to the Prosecutor's Closing Argument

In his tenth and eleventh issues on appeal, appellant asserts his trial counsel was ineffective because he failed to object to the prosecutor's punishment phase argument that allegedly invited the jury to consider the application of parole law.

The prosecutor's argument was as follows:

> The second question, how do you protect our community? If Mr. Harris leaves prison, which there is a probability he will, there is the parole laws laid out for you, there is a possibility he will be back on the street. Do you think you can fix Mr. Harris? Do you think you can stop him from running someone over? Okay. Give him some drug treatment. It's been going on 10 years. Do you think it's just going to stop? We can try and give him some anger management. If someone stands up to him again, do you think it's going to stop?

16

> What do we need to do to protect all of our citizens of Harris County from the defendant? You need to send a clear message to the defendant that you found his actions egregious and absolutely reprehensible. … How do you fix someone who thinks like that? I suggest you can't. I suggest there is no way to get through to Mr. Harris and to say, [y]ou know what, when you get out, you can't behave like that, because it's who he is. And you know that based on the evidence that you heard.

The prosecutor concluded her argument by rejecting defense counsel's recommendation of a twenty year sentence and instead suggested that the jury start at fifty years when considering appellant's punishment. Appellant's trial counsel did not object to the prosecutor's argument. According to appellant, this failure constitutes deficient performance because the prosecutor's argument "improperly applied the parole laws to [appellant]."

Article 37.07 § 4(a) of the Code of Criminal Procedure requires that the jury be given instructions that include information about parole eligibility. *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). The court's charge complied with that requirement. Here, during her argument, the prosecutor did not convey any information that was not already contained in the charge. Therefore, we conclude the prosecutor's argument was not improper. *Id.*[4] Because the prosecutor's argument was not improper, appellant's trial counsel's failure to object cannot constitute deficient performance. *Bradley v. State*, No. 14-10-01167-CR, 2012 WL 403279, at *5 (Tex. App.—Houston [14th Dist.] February 9, 2012, no pet. h.). We overrule appellant's tenth and eleventh issues.

---

[4] We note that the present case is distinguishable from *Branch v. State*, 335 S.W.3d 893, 905–10 (Tex. App.—Austin 2011, pet. ref'd). In *Branch*, the court of appeals held that the defendant's trial counsel was ineffective because his failure to object to the prosecutor's argument that specifically discussed how the parole laws would impact the defendant's time actually served in prison met both *Strickland* prongs. *Id.* Here, the prosecutor did little more than mention the existence of parole laws and the likelihood that appellant would leave prison someday.

## CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the trial court's judgment.

/s/     Margaret Garner Mirabal
        Senior Justice

Panel consists of Justices Seymore, Boyce, and Mirabal.[5]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[5] Senior Justice Margaret Garner Mirabal sitting by assignment.