**Joe Alfred CEVALLOS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0041–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 17, 1985.

Don W. Rogers, Jr., Houston, for appellant.

Charles J. Sebesta, Jr., Washington County Dist. Atty., Caldwell, for appellee.

## OPINION

EVANS, Chief Justice.

The appellant was indicted for the murder of his 13-month-old son. A jury found the appellant guilty of the lesser-included offense of voluntary manslaughter and assessed his punishment at five years confinement.

On the original appeal from the trial court's judgment, this court reversed and remanded the cause, concluding that the charge to the jury contained fundamental error. *Cevallos v. State*, 646 S.W.2d 466 (Tex.App.—Houston [1st Dist.] 1982). On review of the State's Petition for Discretionary Review, the Court of Criminal Appeals ordered the cause remanded to this court for a determination of whether the error, if any, was fundamental in light of *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1984).

The appellant was indicted for the offense of murder under section 19.02(a)(2) of the Texas Penal Code (Vernon 1974). The indictment alleged that the appellant intended to cause serious bodily injury to his son and that he intentionally committed an act clearly dangerous to human life, to-wit: beating his son about the head with his fist, thereby causing his death.

The trial court instructed the jury on the elements of murder under section 19.-02(a)(2), as alleged in the indictment, and it further instructed that if the jury had a reasonable doubt about whether the defendant was guilty of murder, it should next consider whether he was guilty of voluntary manslaughter. Under section 19.04(a) of the Texas Penal Code (Vernon 1974), a person commits the offense of voluntary manslaughter "if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 ... except that he caused the death under the immediate influence of sudden passion arising from an adequate cause."

The trial court, in charging the jury on the offense of voluntary manslaughter, did not instruct on the elements set forth in section 19.02(a)(2). Instead, the court used the language of section 19.02(a)(1), instructing that a person commits the offense of voluntary manslaughter "if he intentionally causes the death of an individual under the immediate influence of sudden passion arising from an adequate cause." In the paragraph of the charge applying the law to the facts, the court instructed the jury that it should find the appellant guilty of voluntary manslaughter if it found that he intentionally caused the death of his son by beating him about the head with his fist, and that at the time death was caused, he had acted under the immediate influence of sudden passion arising from an adequate cause.

The appellant orally objected to the charge on voluntary manslaughter on the ground that the State had not shown that he had acted under the immediate influence of sudden passion arising from an adequate cause. By a written objection, appellant asserted generally that there was no evidence to support a charge on the lesser-included offense of voluntary manslaughter.

The State was not required to allege in the indictment the elements of the lesser-included offense of voluntary manslaughter. *Rodriquez v. State*, 661 S.W.2d 332, 336 (Tex.App.—Corpus Christi 1983, pet. ref'd). If there was sufficient evidence to support a conviction on a lesser-included offense, the trial court was authorized to charge the jury on such offense, even though the appellant did not request the charge, *Smith v. State*, 644 S.W.2d 500 (Tex.App.—Corpus Christi 1982, pet. ref'd), and even over the appellant's objection.

*Humphries v. State,* 615 S.W.2d 737 (Tex. Crim.App.1981).

We have reviewed the evidence and find that it is sufficient to support the jury's finding on the charge of voluntary manslaughter. The appellant's wife, called as a witness for the State, testified that she met the appellant when she was 15 years old, picking oranges in Florida. After she became pregnant, she returned to North Carolina, where she gave birth to a son. She then wrote to the appellant, told him of the birth of their child, and after several months, she returned to Texas. She and the appellant were married in Brenham, where they both resided at the time of the incident.

The appellant's wife testified that on the evening in question, she and the appellant had returned home from a party. She said the appellant had had too much to drink, and as he was carrying the child to the house, he tripped and fell against a tree. She asked the appellant if he was all right, and he replied "Yes," and took the baby into the house. She said the baby was not crying at that time, but when appellant placed him on the couch, he started to cry. She walked into the bedroom to put on her nightclothes and heard the appellant talking to the baby. She testified that the baby was holding his breath, and that the appellant hit him once (or twice) "so that he could get his air." After she saw the child's condition, she became concerned and called a neighbor. The child was then taken to a hospital.

Despite intensive efforts to save the child's life, he died as a result of a severe injury to the brain and upper part of the spinal cord, due to trauma to the head and upper neck region. Photographs taken at the hospital show bruises to the child's face, particularly the left eye, and to his buttocks and thighs. Two physicians who saw the child in the emergency room gave their opinion that the bruises were relatively new. Another physician testified that in his opinion, the child had been sexually abused. All three doctors agreed that a head trauma was the child's only serious injury. They testified that the child's injuries could have come from falling against a tree or against some other solid object. But the doctors also testified that the child's head injuries could not have resulted from a single blow, and that multiple blows had to have been inflicted.

The appellant did not testify at the guilt-innocence phase of trial. All of the appellant's witnesses were members of his family who testified that they had never seen him mistreat the child. The theory of defense presented to the jury was that the child could have been injured when appellant fell against a tree, and/or when appellant's brother pulled him by the legs to take him to the hospital.

■ The jury did not act unreasonably in rejecting the appellant's version of the case, and it was within the jury's province to believe the testimony it had found most credible. In this respect, the testimony of appellant's wife, tending to exculpate appellant, was to some extent discredited by the testimony of her neighbor. The neighbor testified that she was informed by appellant's wife that she had been sleeping when appellant awakened her to tell her that the baby was not breathing.

■ The jury was also entitled to consider the disproportionate size and strength of the appellant in relation to the child, as well as the testimony and photographs showing the severity of the child's injuries. Based on this evidence, and on the evidence of appellant's intoxicated state, the jury could rationally have determined beyond a reasonable doubt that the appellant, in an impulsive, drunken rage, intentionally caused the child's death by striking him with severe force with his fist. Indeed, this seems to be the only plausible explanation for appellant's acts of extreme violence against his infant child.

■ We also hold that even if the trial court erred in charging the jury on the elements of voluntary manslaughter, under section 19.02(a)(1), rather than under section 19.02(a)(2), its charge does not consti-

tute fundamental error as would require a reversal of the judgment.

The trial court's charge on voluntary manslaughter appropriately set out the elements of murder under section 19.02(a)(1), and as provided by section 19.04, related these elements to the offense of voluntary manslaughter. That the trial court charged the jury under section 19.02(a)(1), rather than under section 19.02(a)(2), did not diminish the State's burden of proof, and instead, the charge as given actually increased the State's burden. *Cf. Garcia v. State*, 574 S.W.2d 133 (Tex.Crim.App. 1978); *Fella v. State*, 573 S.W.2d 548 (Tex. Crim.App.1978). Considering the record in its entirety, we find that the court's charge on voluntary manslaughter, if error, did not deprive the appellant of a fair and impartial trial, and we hold that there was no fundamental error, requiring a reversal of the trial court's judgment. *See Almanza*, 686 S.W.2d at 171; *Ussery v. State*, 651 S.W.2d 767, 773 (Tex.Crim.App.1983) (en banc); *see also, Bonfanti v. State*, 686 S.W.2d 149, 153 (Tex.Crim.App.1985) (en banc).

The judgment of the trial court is affirmed.