John David SAMUELS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–88–00441–CR.

Court of Appeals of Texas, San Antonio.

Feb. 7, 1990.

Rehearing Denied March 26, 1990.

Eustorgio Perez, Vela & Perez, Laredo, for appellant.

Enrique Pellegrin, Asst. Dist. Atty., Laredo, for appellee.

Before REEVES, BIERY and CARR, JJ.

## OPINION

BIERY, Justice.

John David Samuels, appellant, was convicted of first-degree murder. The murder victim was his mother, Ophelia Samuels. The jury found that Samuels used a deadly weapon, an automobile, during the commission of the offense. The jury sentenced Samuels to a maximum term of 99 years in the Texas Department of Corrections. We affirm the judgment of conviction.

On appeal, Samuels asserts that the trial court erred in holding the evidence to be sufficient to sustain the jury's guilty verdict. The State sought to prove that Samuels committed murder under Section 19.-02(a)(2) of the Texas Penal Code, which requires two elements: (1) intent to cause serious bodily injury and (2) commission of an act clearly dangerous to human life that causes the death of an individual.

Samuels complains that the evidence presented below was insufficient to show the requisite "intent to cause serious bodily injury." *Id.* As insufficiency of the evidence is raised as a point of error, we will review in detail the facts as they are set forth in the record before us.

Mrs. Samuels died shortly after suffering skull fractures which resulted from two intense blows to her head. She received the head injuries when her son took off in her 1977 Ford Granada while she was gripping the car's hood with her hands.

The events leading up to her death commenced on the afternoon of December 6, 1987, when Samuels, age 39, and his mother, age 62, were engaged in an argument. Samuels was in the driver's seat of his mother's parked car while she was standing at the side of the car on the driver's side, animatedly conversing with him. Samuels was seen clenching his fist and pounding the dashboard during their discourse, which took place in the street in front of Mrs. Samuels' home. In an apparent attempt to keep Samuels from driving off in her car, Mrs. Samuels clutched its hood with her hands. A neighbor who witnessed the fracas said that Mrs. Samuels grabbed onto the hood near the left front corner of the car as the mother and son argued.

The only two eyewitnesses were Mrs. Samuels' neighbor and a friend of appellant Samuels. They gave conflicting testimony on the sequence of events.

According to the neighbor, Samuels backed up the car in preparation to take off; there was another vehicle parked in front of Mrs. Samuels' car which necessitated the maneuver. Mrs. Samuels did not let go of the car, the neighbor noted. Samuels, then positioned to drive away, gunned the engine and took off with his mother still hanging onto the left front hood of the car near the windshield. He accelerated with such intensity that her head hit the windshield with great force. The impact hurtled her from the car, her head hitting the pavement.

The second eyewitness, a friend of Samuels who had been drinking beer with him on the day of the incident, testified that Mrs. Samuels had been about three feet away from the car when her son drove off in a normal manner. Samuels' friend said that Mrs. Samuels then ran to the front corner of the car near the headlight on the

driver's side, thus bringing her injuries upon herself.

Samuels himself testified at trial that he did not see his mother standing by the car; that she jumped in front of the car; and that the force of the car moved her with its left front fender, causing her to fall. The State introduced an ambiguous statement which Samuels made after his arrest: "It wasn't an accident; she brought it on herself." We find this statement subject to two interpretations, the first being that Samuels' act was intentional and the second being that Mrs. Samuels caused her own injuries by clinging to a moving car.

The manner in which Mrs. Samuels was thrown from the car was the subject of varying descriptions. The neighbor testified that Mrs. Samuels fell backward after she hit the windshield. Samuels' friend who witnessed the impact said, "She made a spin, a twist and she fell to the concrete." The medical examiner who conducted an autopsy on Mrs. Samuels was of the opinion that her injuries were consistent with being thrown over the car.

■ In any event, after Mrs. Samuels was thrown from the car, her son did not stop but sped away. He testified at trial that his failure to stop was the result of fright over what had just happened. The State relied upon Samuels' failure to stop as evidence that he intended to cause serious bodily injury to his mother. The State's argument that flight is a circumstance from which an inference of guilt may be drawn is a valid one. *Harris v. State*, 645 S.W.2d 447 (Tex.Crim.App.1983); *McWherter v. State*, 624 S.W.2d 712 (Tex. App.1981). The trier of fact was not required to accept appellant's explanation for his flight, but could instead consider the flight as evidence of guilt. *Taylor v. State*, 672 S.W.2d 262, 264 (Tex.App.— Waco 1984, no pet.).

Samuels was apprehended by police two to three hours after the incident. The officer who apprehended him stated that the Ford which had hit Mrs. Samuels appeared to have recently been washed at the time of the arrest, as there was water dripping from the car. Blood stains were found on the car.

The medical examiner's report stated:

"It is our opinion that Ophelia Davis Samuels, a 62–year–old Caucasian Female, died as a result of craniocerebral injuries (basilar skull fracture and severe underlying brain injuries) when she attempted to stop her son from stealing her car. In doing this, she was struck by the front side of vehicle driven by her son. He then sped away from the scene of the accident. Manner of death: Homicide."

The State relies upon the extent of Mrs. Samuels' injuries to show evidence of Samuels' intent to cause serious bodily injury. We note that Texas courts have permitted the extent of bodily injuries to serve as evidence of intent to kill or to cause serious bodily injury in instances wherein the defendant delivered blows to the victim by beating him with his hands and fists, kicking him, choking him, pushing him, shoving him, or throwing him over an embankment. *See e.g., Bowen v. State*, 640 S.W.2d 929, 931 (Tex.Crim.App.1982); *Skidmore v. State*, 530 S.W.2d 316, 321 (Tex.Crim.App. 1975); *Brown v. State*, 508 S.W.2d 91, 96 (Tex.Crim.App.1974); *Gipson v. State*, 403 S.W.2d 794, 795 (Tex.Crim.App.1966); *Cevallos v. State*, 699 S.W.2d 334, 336 (Tex. App.—Houston [1st Dist.] 1985, pet. ref'd); *Wade v. State*, 630 S.W.2d 418, 421 (Tex. App.—Houston [1st Dist.] 1982, no pet.). However, the nature of the incident before us, wherein an overt and possibly imprudent act of the victim was essential to the chain of events leading to her death, distinguishes the cited cases from the one before us. We conclude, however, the jury necessarily must have found that Mrs. Samuels was in her son's view when he drove off. The jury also had before it evidence showing that Samuels must have taken off at a high rate of speed in order to cause such severe blows to Mrs. Samuels' head. We conclude that these factors can be con-

sidered as evidence of intent to cause serious bodily injury.

There is a dearth of case law concerning the requisite intent to cause serious bodily injury as an element of first-degree murder in such a factual setting as ours, where the victim voluntarily places himself in a precarious position, without which voluntary act no offense could have occurred. In this regard, we note that the jury received the following instruction:

"You are instructed that a person is criminally liable if a specific result would not have occurred but for the person's conduct, wither operating alone or concurrently with another cause. However, if the concurrent cause was clearly sufficient to produce the result and the conduct of the person charged was clearly insufficient, the person charged is not criminally liable for the result."

The jury obviously chose to focus on the point at which Samuels willfully stepped on the gas pedal and took off with his mother clinging to the hood of the car. In finding that Samuels intended to cause serious bodily injury, the jury necessarily had to reject any possibility that "the concurrent cause was clearly sufficient to produce the result and the conduct of the person charged was clearly insufficient." We agree with the jury that the victim's holding onto the car, without concurrent action by the appellant, was insufficient to cause her death.

We note that the jury heard the prosecutor in closing argument describe to the jury the two lesser-included offenses contained in the charge of the court. The prosecutor defined the lesser offenses and explained why he believed that Samuels was guilty of murder, as opposed to either lesser offense. The prosecutor's closing argument informed jurors that the lesser-included offense of involuntary manslaughter does not require intent to cause serious bodily injury but instead requires only a finding that a defendant has recklessly caused the death of an individual. Additionally, the jury heard the prosecutor describe the lesser included offense of criminally negligent

homicide as calling for a defendant's taking of a substantial and unjustifiable risk of which he ought to have been aware. Thus the jury was informed that it could have found that Samuels was guilty of one of the two lesser included offenses as opposed to first-degree murder, but found instead that Samuels acted with intent to cause serious bodily injury at the moment he accelerated as his mother clung to the hood of the car.

As case law is scarce, the State attempts to support its argument that Samuels acted with the requisite intent by relying on an inapposite Court of Appeals opinion in which the appellant's sole contention on appeal was that the evidence was insufficient to support a finding that an automobile was used as a deadly weapon. *Parrish v. State*, 647 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1982, no pet.). *See also* TEX.PEN.CODE ANN. § 1.07(b) (Vernon 1974).

We rely instead on a Court of Criminal Appeals opinion holding that sufficient evidence of "assault with intent to commit murder with malice" existed in the following situation:

A man suggested sexual relations in lewd terms to his female passenger, a stranger to whom he had offered a ride when he saw her walking down the street late at night. She rebuffed him, and he angrily told her to get out of the car. He told her he would give her back her purse after she got out. When she exited on the passenger side, the male driver placed her purse on his left side, out of her reach. As the young woman was reaching inside the car in an attempt to retrieve her purse, the man started the car, and the woman grabbed the door to keep from falling. The car traveled for over half a block at 30 to 40 m.p.h. while she clung to the door of the car, trying to get her feet back inside the vehicle to avoid injury. Her next memory was of awakening in a hospital with a skull fracture and other serious injuries. An eyewitness later told of seeing the young woman's body fly back over the top

of the car. *Hunter v. State*, 468 S.W.2d 96, 98–100 (Tex.Crim.App.1971).

Based upon those facts, the Court of Criminal Appeals concluded, "The surrounding facts and circumstances presented were sufficient for the jury to infer an intent to kill." *Id.* at 100.

■ In determining whether evidence is sufficient to support a conviction, the well-recognized applicable standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984).

■ It is well recognized that the jury is the sole judge of the credibility of witnesses and may accept or reject any part of all of the testimony given by the State's or the defense witnesses. *Markham v. State*, 635 S.W.2d 153, 155 (Tex.App.—San Antonio 1982, no pet.). It is reasonable to infer that in light of the evidence presented by the State, the jury rejected the testimony of Samuels as well as that of Samuels' friend.

■ It is settled that intent may be inferred from acts, words and conduct of the accused. *Brown v. State*, 704 S.W.2d 506, 507 (Tex.Crim.App.1986). While an automobile is not a deadly weapon per se, intent to kill by use of an automobile may be shown from all the circumstances surrounding the killing. *Palafox v. State*, 484 S.W.2d 739, 743 (Tex.Crim.App.1972).

Under the applicable standard of review, we find evidence sufficient to support the jury's finding of Samuel's intent to cause serious bodily injury. Samuels' fourth point of error, alleging that the trial court erred in holding the evidence to be sufficient in this regard, is overruled.

We have considered Samuels' remaining three points of error and have found them also to be without merit.

■ In his first point of error, Samuels contends that the trial court erred in denying Samuels' counsel the right to full voir dire as inherently guaranteed by the Texas Constitution, art. 1, § 10. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985). Samuels contends that his attorney was denied the right to inquire whether prospective jurors had served in civil cases involving automobile accidents. However, the record before us shows that the court overruled the State's objection to the defense attorney's questions regarding the type of civil cases on which the previous jurors had served. The State then suggested that Samuels' counsel restrict his questioning to inquiries about prior civil jury service in cases involving automobile accidents.

The record clearly indicates that the State's suggestion concerning the manner of phrasing the questions, which was accepted by the court, achieved Samuels' goal of determining the veniremen's participation in civil cases involving auto accidents. Samuels' counsel found that one venireman had served on a civil jury involving an auto accident, and he questioned the venireman as he desired.

Further, Samuels made no claims that he was forced to accept a specific juror who was objectionable to him because he had exhausted his peremptory challenges. *See Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); *Cumbo v. State*, 760 S.W.2d 251, 254 (Tex.Crim.App. 1988). We find no abuse of discretion by the trial court in either the conducting of the voir dire examination as a whole or in the trial court's determination of the permissibility of any proposed question. *Aranda v. State*, 640 S.W.2d 766, 767 (Tex. App.—San Antonio 1982, no pet.); *Ryan v. State*, 635 S.W.2d 159, 161 (Tex.App.— Houston [1st Dist.] 1982, no pet.).

■ In his second point of error, Samuels complains that the trial court erred by admitting inflammatory and prejudicial photographs over Samuels' timely objection. The photographs to which Samuels objects are those taken at Mrs. Samuels' autopsy. The medical examiner used the

photographs before the jury to identify the murder victim as the person upon whom he had performed an autopsy. The photos also served as an aid to the jury in understanding the medical examiner's opinion that the injuries to Mrs. Samuels were "... consistent with somebody having been struck by a car and gone over the car."

The rule regarding the admission of photographs is as follows:

> If a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body ... would be admissible, a photograph depicting the same is admissible.

*Jackson v. State*, 745 S.W.2d 4 (Tex.Crim. App.1988).

■ Post-autopsy photographs are admissible unless they depict mutilations of the victim caused by the surgery in performing the autopsy. *Burdine v. State*, 719 S.W.2d 309, 316 (Tex.Crim.App.1986). Those before us are not post-autopsy photographs; they do not depict any such mutilations.

The record before us shows that the exhibits complained of were competent, material and relevant, and were not offered for the purpose of inflaming the minds of the jury but rather for identification and to assist the jury in understanding the medical examiner's verbal testimony regarding his autopsy findings. Samuels' second point of error is overruled.

■ In Samuels' third point of error, he complains that the trial court erred in failing to grant his motion for a mistrial because the jury, after having retired to deliberate on Samuels' punishment, might have discussed parole eligibility requirements. He complains that this violates the rule that the issue of punishment should be decided solely on relevant evidence of record. TEX.R.APP.P. 30(b)(7).

After the jurors had retired to deliberate on Samuels' punishment, the trial court received a note from the jury which read, "What are the eligibility requirements for parole?" The trial court properly refused to answer the question and then overruled Samuels' resulting motion for mistrial based on the jurors having asked the question. Samuels asserts that, based upon the jurors' question, no other conclusion can be reached but that they discussed and considered parole law in assessing the punishment.

*Sneed v. State*, 670 S.W.2d 262 (Tex. Crim.App.1984), sets forth the law that neither mere mention nor a more extensive discussion of parole law constitutes receiving new evidence. *Sneed* overruled earlier cases which held that every case in which a jury discussed parole law constituted jury misconduct. *Id.* at 266–67.

Additionally, even before the *Sneed* decision, the discussion of parole law, to constitute reversible error, required a record for the court to review to determine whether the jury's discussion of parole was misconduct which denied the defendant a fair and impartial trial. Samuels did not allege jury misconduct in his motion for new trial, nor did he present any evidence on the issue at the hearing on the motion. *Bennett v. State*, 738 S.W.2d 33, 34 (Tex.App.—Texarkana 1987, no pet.). Samuels' third point of error is denied.

Having overruled all of Samuels' points of error, we affirm the trial court's judgment of conviction of first-degree murder.