**AFFIRMED; Opinion Filed August 26, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00502-CR

**KELLY LAURA SIXTOS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1259374-R**

## MEMORANDUM OPINION

Before Justices Fillmore, Evans, and Lewis
Opinion by Justice Evans

A jury convicted Kelly Laura Sixtos of aggravated assault with a deadly weapon—her car—causing serious bodily injury to a member of her household—Abisai Martinez—and sentenced Sixtos to twenty-five years' confinement. She brings five issues on appeal, arguing the trial court erred by: (1) sustaining the State's *Batson* challenge to one of her peremptory strikes; (2) incorrectly charging the jury regarding mental state; (3) allowing the State to shift the burden of proof to her in closing argument; (4) failing to *sua sponte* instruct the jury on a necessity defense; and (5) entering judgment on legally insufficient evidence of her mental state. Deciding appellant's issues against her, we affirm the trial court's judgment.

## I. BACKGROUND

One evening after work, appellant drove her car over Martinez with whom she had a romantic relationship. The night before the incident, appellant and Martinez had a physical fight

after which she terminated his living in her apartment, requiring him to leave with his belongings. When appellant returned from work the next evening, Martinez was in the parking lot of the apartment complex. They had a verbal dispute and appellant attempted to leave in her car. A security camera recorded a dark, grainy video of the movement of appellant's car as she began a three-point turn by backing up while turning and then paused. Martinez ran after her maintaining just a few feet between himself and the front of appellant's car. Appellant's headlights brightly illuminated Martinez in a light colored, short sleeve shirt as he ran after her staying in front of her car as its reverse motion came to a stop. Appellant's car then moved forward running over Martinez. The front left, then the rear left, of the car bounced as it passed over Martinez.

Appellant was indicted and tried by a jury. In addition to the video shown to the jury, Jairo Vidales testified that he witnessed from an apartment balcony the verbal altercation between appellant and Martinez. He saw clothes, pants, shirts, and an iron thrown out of the window of the car. He did not see Martinez act aggressively toward appellant. Vidales saw appellant back up, "then just step on the gas," she "didn't bother to slow down," and she "pretty much thrown him pretty good." Vidales summarized, "she could have reversed or go around him but she didn't, she just floored the gas, took off," running over Martinez. Vidales testified appellant drove fast stating, "When she run over that guy over [*sic*], she took off fast peeling out of the parking lot." He also testified, "she just floored the gas, took off." Vidales testified the sound of something being run over was loud.

Martinez testified he remembered seeing appellant driving the car into the parking lot and then his next memory is waking up in the hospital. He testified he was in a coma for two weeks. Dr. Laura Petrey, a double-board certified trauma surgeon, testified Martinez arrived at Baylor Hospital in a coma and was given the most seriously injured patient rating. She testified he

suffered two distinct brain injuries, a fractured skull, and numerous other injuries. Dr. Petrey testified Martinez's injuries were serious bodily injuries using the statutory definition in section 1.07(46) of the penal code. She testified a motor vehicle could be a deadly weapon and Martinez's injuries were consistent with blunt force trauma from being hit by a motor vehicle.

Appellant testified in her own defense that she fled the scene because she feared Martinez due to the prolonged physical abuse he subjected her to and the severe fight they had had the night before the incident. Appellant testified the night before Martinez had grabbed her by her hair, picked her up from where she was sitting, shoved her against a wall, choked her until she almost passed out causing her to vomit, shoved her face into a pile of dog manure, and threatened to kill her and himself.

Appellant testified the next evening when she drove into the parking lot she saw Martinez walking fast towards her with a shirt and towel on one arm and an iron in his other hand. She testified she "knew" he was going to hit her and take the car so she testified she "put the car in reverse as fast as I could back to avoid him." Appellant testified, "he was putting his hand in his pocket to get the spare key and trying to open the door to the driver door. And I freaked out, I got scared. That's when I took off." Appellant testified Martinez ran out in front of the car to try to stop her from leaving; that is when she "took off. Because I knew what was going to happen. We fought like that before, he's done it before." She testified when she hit the gas it was because she feared for her life because he usually hits her and the night before threatened to kill her and had choked her. She summarized, "I just wanted to get out of there. I wasn't trying to hurt him. I was trying to get out of there . . . ." Photographs of her injuries from the evening before were introduced into evidence.

The jury convicted appellant of aggravated assault with a deadly weapon causing serious bodily injury to a member of her household. *See* TEX. PENAL CODE ANN. § 22.02(b)(l) (West 2011). Appellant timely filed this appeal.

## II. ANALYSIS

### A. *First Issue: the State's* **Batson** *Challenge to Sixtos's Peremptory Strike of Juror One*

During voir dire, appellant questioned prospective Juror One in the following exchange:

[APPELLANT'S COUNSEL]: Mr. [Juror One's name]?

PROSPECTIVE JUROR [ONE]: Yes, sir.

[APPELLANT'S COUNSEL]: Are you an engineer?

PROSPECTIVE JUROR [ONE]: Yes.

[APPELLANT'S COUNSEL]: What -- I always like to find out about folks who are engineers because they seem to be typically very analytical, very organized. And from my perspective, that's the kind of juror I want. What kind of engineer are you?

PROSPECTIVE JUROR [ONE]: I actually did field engineer recording equipment, 911, that type stuff. I'm retired now.

[APPELLANT'S COUNSEL]: Oh okay. Who did you work for, if you don't mind me asking?

PROSPECTIVE JUROR [ONE]: I worked for Dictaphone and then I went to work for Nice Systems.

[APPELLANT'S COUNSEL]: All right.

PROSPECTIVE JUROR [ONE]: Dictaphone was purchased by Nice Systems.

[APPELLANT'S COUNSEL]: When you say related to 911 calls, was that -- were you -- did you do work for law enforcement?

PROSPECTIVE JUROR [ONE]: For the city of Dallas, yes.

[APPELLANT'S COUNSEL]: Oh okay.

PROSPECTIVE JUROR [ONE]: I repaired their equipment, 911.

[APPELLANT'S COUNSEL]: All right. But that--other than contracting with the City of Dallas, you didn't have some relationship with law enforcement or something like that?

PROSPECTIVE JUROR [ONE]: No.

Appellant peremptorily struck prospective Juror One in addition to other males. The State challenged appellant's peremptory strikes of males, including prospective Juror One, as violating *Batson v. Kentucky,* 476 U.S. 79, (1986), arguing "I don't think [appellant's trial counsel] wants any males that will sympathize with a male being a victim of domestic violence." Appellant responded that when asked about his employment Juror One's "responses were curt, short, and I thought that he simply was of the opinion that either he didn't want to be here at all or he didn't like me personally." The State responded, "I don't think there was a reason given that would supercede [*sic*] my motion for Batson." The trial court repeated appellant's trial counsel's stated reason for striking Juror One ("curt answers") and sustained the State's *Batson* challenge to prospective Juror One, but overruled the remainder of the State's *Batson* challenges granting appellant's peremptory challenges to the other males.

When we review a trial court's ruling on a *Batson* challenge, we "should not overturn the trial court's resolution of the *Batson* issue unless [we] determine[] that the trial court's ruling was clearly erroneous." *Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013) (citing *Herron v. State*, 86 S.W.3d 621, 630 (Tex. Crim. App. 2002)); *see Davis v. State*, 329 S.W.3d 798, 815 (Tex. Crim. App. 2010) ("The trial court's determination is accorded great deference and will not be overturned on appeal unless it is clearly erroneous."). We review the entire record of voir dire, *see Blackman*, 414 S.W.3d at 765, and do so in the light most favorable to the trial court's ruling. *Davis*, 329 S.W.3d at 815.

The first step of a *Batson* challenge begins when a challenger makes a *prima facie* showing of discrimination in the opponent's exercise of its peremptory strikes. *See Davis*, 329

S.W.3d at 815 (citing *Herron,* 86 S.W.3d at 630). Then, in the second step, the burden shifts to the party making the strikes to articulate gender-neutral explanations for its strikes. *Guzman v. State,* 85 S.W.3d 242, 246 (Tex. Crim. App. 2002). Once the party making the strikes has articulated a gender-neutral explanation, in the third step the burden shifts back to the challenging party to show that the explanations are a pretext for discrimination. *See Davis*, 329 S.W.3d at 815. The trial court must then determine whether the challenging party has carried its burden of proving discrimination. *Id.*

When a party challenges an opponent's strike on the basis of purposeful discrimination, if the trial court proceeds immediately to the second step by inquiring of the proponent whether he had a non-discriminatory purpose, a reviewing court is to assume that the opponent has satisfied his step-one obligation to make a prima facie case of purposeful discrimination and address only the second and third steps. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). At the second step of the analysis, there is no fact-finding to be done. The trial court simply accepts the explanation for the strike at face value and determines whether it is a reasonably specific discrimination-neutral reason. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995). A discrimination-neutral explanation means any explanation based on something other than race, gender, or ethnicity. *See id*.; *Guzman*, 85 S.W.3d at 245 (Tex. Crim. App. 2002) (a litigant may not exercise a peremptory challenge based on the juror's gender . . ., ethnicity, or race") (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (gender); *Hernandez v. New York*, 500 U.S. 352 (1991) (ethnicity); *Batson*, 476 U.S. at 100 (race)). Unless a discriminatory intent is inherent in the explanation, the reasons offered will be deemed discrimination-neutral. *See Purkett*, 514 U.S. at 768; *see also Fritz v. State*, 946 S.W.2d 844, 847 (Tex. Crim. App. 1997) (discriminatory intent inherent in reason for peremptory challenge that males under the age of thirty would identify with opponent). "Thus, it is only at step three 'that the persuasiveness of

the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.'" *Guzman*, 85 S.W.3d at 246 (citing *Purkett*, 514 U.S. at 768).

The State challenged appellant's peremptory strikes of male prospective jurors. Because the trial court moved immediately to step two, we assume the validity of the State's initial challenge. *See Watkins*, 245 S.W.3d at 447. Appellant's counsel then gave a reasonable, gender-neutral reason for his strike: Juror One's answers were curt and short from which appellant's counsel stated he inferred he did not think Juror One wanted to be a juror or did not like appellant's counsel. In accordance with the second stage of a *Batson* challenge, the trial court merely accepted the proffered reason as gender-neutral, not whether it was persuasive. *Guzman*, 85 S.W.3d at 246 (citing *Purkett*, 514 U.S. at 768). The prosecutor challenged appellant's counsel's statement arguing she did not think it overcame her *Batson* challenge. When it announced its ruling on all the *Batson* challenges, the trial court singled out appellant's reasons for peremptorily striking prospective Juror One from all the other similar peremptory challenges of male prospective jurors as the one involving "curt answers" and sustained the State's challenge. By so ruling, the trial court chose to disbelieve counsel's reason and determined that appellant's strike of Juror One violated *Batson*.

Our review of the record supports the trial court's ruling. First, Juror One addressed appellant's counsel as, "Sir," a respectful term. Second, Juror One's answers were not curt; that is the answers were not terse, brusque, or abrupt. Instead, Juror One answered each question directly and volunteered additional information three times adding to three separate answers: "I'm retired now." "Dictaphone was purchased by Nice Systems." and "I repaired their equipment, 911." Third, Juror One's answers were not short. After the first two answers to identifying questions, Juror One answered with multiple sentences and multiple thoughts, clearly

providing helpful information to appellant's counsel. Only Juror One's last answer about not having a relationship with law enforcement was a short, "No." When a party's explanation for its peremptory strike is contradicted by the record, that is "persuasive evidence that its stated reason for striking [the prospective] Juror [] was pretextual." *Greer v. State*, 310 S.W.3d 11, 18 (Tex. App.—Dallas 2009, no pet.).

In a *Batson* hearing, [t]he trial court is the sole judge of the credibility of the witnesses and may choose to believe or disbelieve all or any part of any witness' testimony." *Wiltz v. State*, 749 S.W.2d 519, 520 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (sustaining trial court's apparent disbelief of proffered race-neutral reason for peremptory challenges). The Supreme Court has consistently recognized that credibility determinations of the trial court should be given great deference on appellate review. *See Batson*, 476 U.S. at 98 n.21 ("Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."). Our review of the record fully supports the trial court's ruling; nothing in the record supports appellant's counsel's stated reasons. *See Greer*, 310 S.W.3d at 18 (when a party's explanation is not supported by the record it is presumptively pretextual). On this record we cannot say the trial court clearly abused its discretion. Accordingly, we overrule appellant's first issue.

## B. *Fifth Issue: Sufficiency of the Evidence Regarding Appellant's Mental State*

In her fifth issue, appellant argues there was insufficient evidence to support the jury's conviction of her for recklessly, knowingly, or intentionally causing serious bodily injury to Martinez. When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if

"the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). This standard is the same for both direct and circumstantial evidence. *Id.* We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

One way a person commits assault is if she "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2013). A person commits aggravated assault is if she commits assault "causing serious bodily injury to another" or "uses or exhibits a deadly weapon during the commission of the assault." *Id*. § 22.02(a) (West 2011).

The parties agree that a hypothetically correct jury charge would instruct the jury that they could convict appellant if she had one of these three mental states:

> A person acts recklessly, or is reckless, with respect to the result of her conduct when she is aware of but consciously disregards a substantial risk that the result will occur.
>
> A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result.
>
> A person acts intentionally, or with intent, with respect to a result of her conduct when it is her conscious objective or desire to cause the result.

"Direct evidence of the requisite intent is not required . . . ." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). "A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims. A jury may also infer knowledge from such evidence. This has been the rule in Texas for over 100 years." *Id.* Thus, a jury properly inferred intent from a defendant's acceleration of a motor vehicle while a passenger was half-way in the window resulting in serious bodily injuries to the passenger—a concussion, broken hip, and cracked skull. *Hunter v. State*, 468 S.W.2d 96, 99–100 (Tex. Crim. App. 1971). Similarly, a jury found a defendant "acted with intent to cause serious bodily injury at the moment he accelerated as his mother clung to the hood of the car." *Samuels v. State*, 785 S.W.2d 882, 886 (Tex. App.—San Antonio 1990, pet. ref'd). Numerous unpublished opinions have similarly concluded that rational juries may infer intentionally or knowingly causing serious bodily injury or threat of serious bodily injury from a defendant's acceleration of a motor vehicle towards a person they know to be in the path of the vehicle.[1]

The evidence the State presented against appellant included the security camera recording and the testimony of Vidales. The security camera recording depicted appellant's car back up in

---

[1] *See Ownbey v. State*, No. 05-08-00611-CR, 2009 WL 1286280, at *2 (Tex. App.—Dallas May 11, 2009, no pet.) (mem. op., not designated for publication) (sufficient evidence for all elements of aggravated assault with deadly weapon from facts that defendant backed up, stopped, then put truck in drive, spun tires leaving rubber on the pavement, and accelerated toward complaining witness standing ten feet in front of vehicle hitting complaining witness even though he jumped to get out of the way); *see also Herring v. State*, No. 02-12-00546-CR, 2014 WL 173481, at *5 (Tex. App.—Fort Worth Jan. 16, 2014, no pet.) (mem. op., not designated for publication) (jury could have rationally inferred defendant's intent to kill trooper from defendant's acceleration directly toward one trooper, changing direction toward second trooper, revving engine and accelerating slow-moving tractor as fast as it would go with the bucket positioned to either protect defendant or ram troopers); *Ayers v. State*, No. 14-10-00747-CR, 2011 WL 6808319, at *3-4 (Tex. App.—Houston [14th Dist.] Dec. 22, 2011, no pet.) (mem. op., not designated for publication) (intentionally or knowingly threatening complaining witness inferred from defendant backing up and then driving into complaining witness at high rate of speed); *Creighton v. State*, No. 08–09–00022–CR, 2011 WL 743073, at *3 (Tex. App.—El Paso March 2, 2011, no pet.) (not designated for publication) (evidence sufficient to establish intent to threaten with imminent bodily harm where defendant backed up his vehicle, stopped, put his vehicle into drive, and turned wheels toward officer, who was standing ten feet away from front of vehicle, and accelerated towards officer, requiring him to jump onto curb to get out of vehicle's path).

a ninety degree turn while Martinez ran after the car. The recording depicts appellant's car move forward over Martinez. Further, as stated above, Vidales testified he saw appellant back up and then accelerate, or as he described it, "step on the gas," "she just floored the gas, took off," "she took off fast peeling out of the parking lot," and "she just floored the gas, took off." Finally, Dr. Petrey testified that Martinez's injuries were rated the most severe injury category for medical treatment and that they met the penal code definition of serious bodily injury. She testified that a motor vehicle could be a deadly weapon. Dr. Petrey ended by testifying Martinez's injuries were consistent with blunt force trauma caused by a motor vehicle.

A rational jury could conclude from the evidence that when appellant stopped her car's backward motion and changed gears to move forward she saw Martinez in front of her car close enough he could touch it. A jury could conclude appellant knew there was no empty space available sufficient for appellant to move her car forward at all without running Martinez over. A rational jury could conclude that appellant knew running over Martinez with her car would cause serious bodily injury and that her car in that use would function as a deadly weapon. A rational jury could conclude that when appellant accelerated forward and ran over Martinez that she consciously disregarded a substantial risk that serious bodily injuries would result from her conduct, was aware that her conduct was reasonably certain to cause serious bodily injuries, or had as her conscious objective or desire to cause serious bodily injuries. There is sufficient evidence of appellant's reckless, knowing, or intentional mental state. Appellant's fifth issue is overruled.

### C. Second Issue: Charge Error Regarding Intent, Knowing, and Reckless

In her second issue, appellant argues that the trial court erred by incorrectly charging the jury regarding intentional, knowing, and reckless in the abstract portion of the charge and that the error caused egregious harm. The State concedes there may be error in the abstract portion of

the charge, but argues the charge was correct in the application portion and any error did not cause egregious harm. We will explain the error in the abstract portion of the charge, then explain our reasons for agreeing with the State that any error was not egregious.

When we review claims of jury charge errors, we first decide whether there was error in the charge. *Ferguson v. State*, 335 S.W.3d 676, 684 (Tex. App.—Houston [14th Dist.] 2011, no pet.). If there was error and appellant objected to the error at trial, then only "some harm" is necessary to reverse the trial court's judgment. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, however, the appellant failed to object at trial—as in this case—then appellant will obtain a reversal "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'–in short 'egregious harm.'" *Id.* Egregious harm is the type and degree of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defense theory. *Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information [revealed] by the record of the trial as a whole." *Trejo v. State,* 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171). Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

The offense in this case, aggravated assault by causing serious bodily injury or by causing bodily injury by use of a deadly weapon, is a result-oriented offense. *See Johnson v. State,* 271 S.W.3d 756, (Tex. App.—Waco 2008, pet. ref'd) ("Therefore, we hold that aggravated assault by causing bodily injury, accompanied by the use or exhibition of a deadly weapon, is a result-oriented offense . . . ."). Thus, the culpable mental state definitions in the jury charge

should have solely referenced the result of appellant's conduct. In this instance, however, the abstract portion of the jury charge included the following additional, italicized language:

> A person acts recklessly, or is reckless, with respect to *circumstances surrounding her conduct or* the result of her conduct when she is aware of but consciously disregards a substantial risk that *the circumstances exist or* the result will occur.
>
> *A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist.* A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result.
>
> A person acts intentionally, or with intent, with respect *to the nature of her conduct or* to a result of her conduct when it is her conscious objective or desire to *engage in the conduct or* cause the result.

*See* TEX. PENAL CODE ANN. § 6.03(a)-(c) (West 2011). However, the application paragraphs of the charge connected intentional, knowing, or reckless only to the results of appellant's conduct when it instructed the jury that they could convict appellant only if they found she "did . . . intentionally, knowingly or recklessly cause serious bodily injury to Abisai Martinez . . . by striking or by running over complainant with a motor vehicle . . . ."

At trial, appellant did not object to the jury charge, but on appeal she argues that she was egregiously harmed by error in the charge. Specifically, appellant argues that the trial court erroneously instructed the jury to find her guilty if it found she possessed the requisite culpable mental state not just as to the result of her conduct, but the conduct itself (the italicized language above). Appellant forcefully states her argument that because the sole issue at trial was whether she intended to hurt the complainant or whether she was simply trying to flee, the trial court "effectively neutered her defense" by instructing the jury to convict her in either circumstance. The State responds that even if the abstract portion of the jury charge contained incorrect definitions (the italicized language above), such error was not harmful and the application paragraph of the charge correctly instructed the jury.

The application paragraph applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations. *See Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). "'It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction.'" *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). The application paragraph "explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Id*. Accordingly, we should look to the application paragraph to determine whether the jury was correctly instructed in order to resolve a harm analysis. *Id.* Thus, an application paragraph that correctly instructs the jury on the law applicable to the case mitigates against a finding that error in the abstract portion of the jury charge was egregious. *See Medina v. State,* 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Davis v. State*, 05-13-00200-CR, 2014 WL 1778269, at *12 (Tex. App.—Dallas May 1, 2014, pet. filed) (not designated for publication). With these principles in mind, we will proceed to conduct a harm analysis using the *Almanza* factors. *See Doughtery v. State*, PD-1411-05, 2006 WL 475802, at *1 (Tex. Crim. App. March 1, 2006) (per curiam) (not designated for publication) (reversing appellate court that did not conduct analysis using all *Almanza* factors).

The first *Almanza* factor requires consideration of the entire jury charge. *See Almanza*, 686 S.W.2d at 171. As we explained above, the abstract portion of the jury charge included additional language regarding the conduct of appellant in regard to the culpable mental states. However, the application paragraphs of the charge correctly instructed the jury that they could convict appellant only if they found she "did . . . intentionally, knowingly or recklessly cause serious bodily injury to Abisai Martinez . . . by striking or by running over complainant with a motor vehicle . . . ." Accordingly, the charge as a whole does not weigh in favor of egregious harm.

The second *Almanza* factor involves the state of the evidence, including the contested issues and weight of the probative evidence. *See Id.*, 686 S.W.2d at 171. We have analyzed the sufficiency of the evidence regarding intentional, knowing, and reckless and concluded that there was sufficient evidence for the jury to convict appellant. Critical to our analysis are the authorities that note for over 100 years juries in Texas have been permitted to infer intent and, specifically, intent to cause serious bodily injury from conduct in which a driver accelerates a motor vehicle towards a person the driver knows to be in front of the vehicle. *See Hunter*, 468 S.W.2d at 99-100; *Samuels*, 785 S.W.2d at 886; *see also supra* n. 1. The jury heard appellant's full version of the physical abuse she suffered from Martinez and her desire to accelerate out of the parking lot to escape him, thereby admitting her speed of exit. During her trial testimony appellant initially denied that Martinez was in front of her car and claimed he was on the side of the car trying to get in through the driver's door. When appellant was confronted with the security video, however, she admitted Martinez was in front of her car when she accelerated. As we concluded above, the jury rationally could disbelieve appellant's version and instead believe that appellant's acceleration with Martinez directly in front of and close to her car was committed intentionally, knowingly, or recklessly to cause serious bodily injury to Martinez.

The third *Almanza* factor involves the argument of counsel. *See Almanza*, 686 S.W.2d at 171. In closing argument, the State correctly argued that appellant "intentionally or knowingly or recklessly caused serious bodily injury to [Martinez] . . . . That's all we have to prove to you." The State specifically argued knowingly was proven because appellant "was reasonably certain to run him over if she put it into drive and went forward[.] She knew that." The State further argued that for the same reason appellant was reckless because "she hauls forward and runs him over like a speed bump." The State again connected intentional and reckless to the results of appellant's conduct when the State argued:

> You see the video. You see that split second where that victim is in front of her. You want to talk about intentional? That's intentional. You want to talk to reckless? How about the person that you've been talking to for the last few minutes in front of your car, as you moves he moves. Don't you think if you put it into drive you're going to run right over him?

The State also argued intentional could be found because, "She didn't stop, she didn't come back, she didn't do anything. She fled and hid." The State argued, "You infer from her actions what her intent was." The State's argument about how the jury would determine appellant's state of mind is consistent with Texas authorities reasoning that a jury may infer intent from the conduct of accelerating a vehicle towards a person whom the driver knows to be in front of the vehicle. *See Hunter*, 468 S.W.2d at 99-100; *Samuels*, 785 S.W.2d at 886; *see also supra* n. 1. Accordingly, the State's argument—consistent with Texas law about inferring intent from conduct—does not favor a finding of egregious harm.

The final *Almanza* factor addresses any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171. We are not aware of any other relevant information that we should consider.

Thus, in light of the *Almanza* factors, we are unable to conclude that appellant suffered egregious harm from the definitions in the abstract section of the jury charge that failed to limit the culpable mental states to the result of appellant's conduct. Accordingly, we overrule appellant's second issue.

### D. Third Issue: State's Closing Argument Regarding Appellant's Burden of Proof

In her third issue, appellant complains the State improperly argued to the jury by shifting to appellant the burden to prove her affirmative defense of self-defense. She contends the error of the trial court in allowing the improper argument harmed her.

Proper jury argument in criminal cases includes argument as to the truthfulness of a witness's testimony so long as the argument is based on the evidence presented and reasonable

deductions from such evidence, including the complainant's demeanor while testifying. *See Gonzalez v. State*, 337 S.W.3d 473, 483 (Tex. App.—Houston [1st Dist.] 2011); *see also Good v. State*, 723 S.W.2d 734, 736–37 (Tex. Crim. App. 1986) (holding that prosecutor's argument on truthfulness of witness was reasonable deduction from witness's testimonial demeanor, which is considered to be in evidence); *Graves v. State*, 176 S.W.3d 422, 431 (Tex. App.—Houston [1st Dist.] 2004) (stating that jury argument may include vouching for witnesses' credibility if it is reasonable deduction from evidence). It is not proper argument for a prosecutor merely to state the prosecutor's opinion of a witness' credibility. *Williamson v. State*, 771 S.W.2d 601, 608 (Tex. App.—Dallas 1989, pet. ref'd).

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd). A trial court's erroneous overruling of a defendant's objection to a jury argument that exceeds the bounds of proper argument is not reversible error unless it affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). In determining whether appellant's substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Martinez*, 17 S.W.3d at 692–93; *Mosley*, 983 S.W.2d at 259. We must assess "whether [the] jury argument is extreme or manifestly improper [by] look[ing] at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Brown*, 270 S.W.3d at 573 & n.3; *see also Cantu v. State*, 939 S.W.2d 627, 633

(Tex. Crim. App. 1997) (jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error).

We first determine whether the complained-of jury argument was improper and whether the trial court abused its discretion in overruling the objection. The jury argument appellant complains shifted the burden of proof to her is italicized below while portions the State emphasizes in its response are underlined. This Court has numbered the paragraphs for reference in this opinion and has included a portion of the State's rebuttal argument neither party emphasized.

[1] [STATE]: But the question before you right now is this one question: Was she justified in using deadly force on the date of this offense? That's it, that's all.

[2] So when we talk about that, I want to go over with you some things that we discussed as far as what her rights are. She's presumed innocent. That doesn't mean she's presumed to tell the truth. You get to judge her credibility just like you do everyone else's and you get to consider the fact that she has everything to lose and everything to gain by what she says up on the stand. *She's the one that has the biggest burden right now as far as what's going to happen to her.*

[APPELLANT'S COUNSEL]: Objection, Your Honor, I believe that's improper argument to shift the burden to my client.

THE COURT: Well, [if] the jury interprets that as shifting the burden of proof, I'll sustain an objection; if not, I'll overrule the objection.

[3] [STATE]: What I'm telling you, ladies and gentlemen, is this: She's the one that has everything to lose or gain by what happens here by what you decide.

[4] Now they also have equal subpoena power. They don't have a duty at all to bring any evidence, but if they do, that evidence needs to be credible to you. So I want to talk about the evidence that they didn't bring to you but they wanted to talk about or make light of as if it were there.

[5] *Where are the medical records?* She was beat brutally, as she said, on the 18th to the point of vomiting and she had to go to hospital, but they sit here and they don't have a single medical record to show you about what happened to her. They could have subpoenaed those records, they could have brought them.

[6] You know what else they didn't do? She said, I had all these injuries, I got choked to the point of vomiting. There's not a single bruise around her neck. She didn't call to report it to the police, there are no reports of any abuse. All you have is what she's telling you.

[7] And let me tell you something. She's got everything to lose and everything to gain and she waits till this moment and doesn't bring everything for you to consider.

* * *

[8] [Excerpt of State's rebuttal:] Now what did they bring you? You heard from the defendant herself. And defense counsel is absolutely right. He [*sic*] doesn't have to do anything but sit there. But he's [*sic*] chosen to do more than sit there. She got up and told you her version of events.

(Emphasis of italics, underlining, and paragraph numbers added).

The State's argument regarding appellant's defense focused on challenging appellant's credibility. The State focused on persuading the jury that while they must presume appellant innocent, the law did not require them to presume appellant was telling the truth when she testified. *See* ¶ 2. The State immediately followed that by paraphrasing the instruction in the charge that the jury was the sole judge of the credibility of the witnesses and that would include appellant. With that introduction the State pointed out, "and you get to consider the fact that she has everything to lose and everything to gain by what she says up on the stand. *She's the one that has the biggest burden right now as far as what's going to happen to her.*" Clearly the State's argument is that the witness at trial with the largest interest in the outcome of the case by influencing the jury was appellant and that the jury could consider that when judging her credibility. This is proper jury argument about judging the credibility of a defendant who chose to testify. *See Gonzalez*, 337 S.W.3d at 483; *Good*, 723 S.W.2d at 736–37; *Graves*, 176 S.W.3d

at 431. Accordingly, the trial court did not abuse its discretion when it overruled appellant's objection.[2]

The State continued its challenge to appellant's credibility by pointing out the lack of proof of appellant's claim of self-defense. Having reminded the jury that appellant does not have a burden of proof, *see* ¶ 4, the State then again challenged the credibility of the self-defense evidence by pointing out that appellant had equal subpoena power and there were no medical records or other corroborating proof in the record; only appellant's testimony. *See* ¶¶ 5, 6. The State then returns to a "biggest burden" argument phrased as, "She's got everything to lose and everything to gain . . . ," ¶ 7, and then again challenges the credibility of appellant's defense due to the lack of proof. No objection in the trial court or on appeal has been made to this portion of the argument. Even in the State's rebuttal argument it challenged the credibility of appellant's defense using the same pattern of acknowledging she did not have a burden of proof and then attacking the lack of evidence supportive of her defense. *See* ¶ 8. Extensive portions of the State's closing argument were devoted to the lack of any corroboration of appellant's testimony and challenging the credibility of the witnesses appellant called in her defense and the credibility of their testimony. This was proper jury argument challenging the credibility of evidence favorable to appellant. *See Gonzalez*, 337 S.W.3d at 483; *Good*, 723 S.W.2d at 736–37; *Graves*, 176 S.W.3d at 431.

The State's argument did not shift the burden of proof to appellant and the trial court did not abuse its discretion in allowing the State's argument. We overrule appellant's third issue.

---

[2] We do not decide that the trial court overruled the objection. However, since appellant argues this conclusion we will treat the trial court's ruling as overruling the objection for the purposes of our analysis.

## E. Fourth Issue: Trial Court's Failure to **Sua Sponte** *Instruct the Jury on Defense of Necessity*

In her fourth issue, appellant argues the trial court erred by failing to *sua sponte* include in its charge to the jury a defense of necessity. Although appellant did not propose a necessity instruction to the trial court, appellant relies on section 9.22 of the penal code which allows a defense of justification when:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
>
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
>
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22 (West 2011).

The purpose of the jury charge is to inform the jury of the applicable law and guide the jurors in applying it to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).[3] The trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). This duty exists even when defense counsel fails to object to inclusions or exclusions in the charge and thus may require the trial court to *sua sponte* instruct the jury on the law applicable to the case. *Taylor*, 332 S.W.3d at 486. However, "Article 36.14 imposes no duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues . . . ." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). This is so because, "[d]efensive issues are those 'on which instructions are not mandated by any statute.'" *Zamora v. State*, 411 S.W.3d 504, 513 (Tex. Crim. App. 2013) (quoting *Oursbourn v.*

---

[3] The standard of review for alleged error in a jury charge is set forth above in Section C.

*State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008)).    Defensive issues "involve strategic decisions and tactics generally left to the lawyer and the client." *Id*. (citing Posey, 966 S.W.2d at 63; *Delgado*, 235 S.W.3d at 249).

We have found no precedent that concludes the defense of necessity is mandated by statute as part of the law of aggravated assault.  Nor has appellant cited us to any or made argument why defense of necessity should be considered as part of the law of aggravated assault. Instead, appellant generally argues that a defendant is entitled to an affirmative instruction on every defensive issue raised by the evidence, citing cases where a defendant requested an instruction on a defense.  *See Hamel v. State*, 916 S.W.2d 491, 492 (Tex. Crim. App. 1996) (defendant requested jury instructions on self-defense and defense of a third person); *Villarreal v. State*, 821 S.W.2d 682, 685 (Tex. App.—San Antonio 1991, no pet.) (defendant requested jury instruction on claimed defense of alibi).  Here, appellant did not request a jury instruction on defense of necessity.  Following *Zamora* and *Posey*, we conclude the trial court had no duty to *sua sponte* instruct the jury on the defense.  *See* Tex. R. App. P. 33.1(a); TEX. PENAL CODE ANN. §§ 22.01, 22.02.  We overrule appellant's fourth issue.

### III. CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.


David Evans
_____
DAVID EVANS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
130502F.U05

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KELLY LAURA SIXTOS, Appellant

No. 05-13-00502-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1259374-R.
Opinion delivered by Justice Evans.
Justices Fillmore and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of August, 2014.